# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTHONY COLEMAN,<br><br>    Plaintiff,<br><br>v.<br><br>SCOTT FRAUENHEIM, et al.,<br><br>    Defendants. | Case No. 1:17-cv-01276-DAD-BAM (PC)<br><br>SCREENING ORDER GRANTING PLAINTIFF LEAVE TO FILE AMENDED COMPLAINT<br><br>(ECF No. 1)<br><br>**THIRTY-DAY DEADLINE** |

Plaintiff Anthony Coleman ("Plaintiff") is a state prisoner proceeding pro se and in forma pauperis in this civil rights action under 42 U.S.C. § 1983. Plaintiff's complaint, filed on September 25, 2017, is currently before the Court for screening. (ECF No. 1.)

**I.    Screening Requirement and Standard**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity and/or against an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). Plaintiff's complaint, or any portion thereof, is subject to dismissal if it is frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915A(b); 1915(e)(2)(B)(ii).

1

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences." Doe I v. Wal-Mart Stores, Inc., 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted).

To survive screening, Plaintiff's claims must be facially plausible, which requires sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable for the misconduct alleged. Iqbal, 556 U.S. at 678 (quotation marks omitted); Moss v. U.S. Secret Serv., 572 F.3d 962, 969 (9th Cir. 2009). The sheer possibility that a defendant acted unlawfully is not sufficient, and mere consistency with liability falls short of satisfying the plausibility standard. Iqbal, 556 U.S. at 678 (quotation marks omitted); Moss, 572 F.3d at 969.

## II. Plaintiff's Allegations

Plaintiff is currently housed at Pleasant Valley State Prison ("PVSP") in Coalinga, California, where the events in the complaint are alleged to have occurred. Plaintiff names the following defendants: (1) Warden Scott Frauenheim; (2) Secretary Scott Kernan, California Department of Corrections and Rehabilitation ("CDCR"); (3) Mike Rainwater, PVSP Correctional Plant Manager II; (4) A. S. Munoz, PVSP Fire Chief; (5) Ifoema Ogbuehi, PVSP Nurse Practitioner; (6) L. Macias, PVSP Correctional Officer; (7) A. Borders, PVSP Correctional Officer; and (8) W. Yang, PVSP Correctional Officer.

Claim I

Plaintiff alleges that Defendants Kernan and Frauenheim have a duty to house inmates in a safe living environment. Defendant Rainwater and all other defendants were aware of leaking ceilings that caused cell and general prison-area flooding and roof damage, including mold. Defendants Rainwater and Munoz received reports during the course of their duties of leaking ceilings and flooding throughout PVSP and have maintenance and repair logs.

Plaintiff further alleges that Facility Bravo Yard Education Department was shut down

due to ceiling leaks and excessive flooding. Facility Charlie Yard Kitchen was shut down due to ceiling leaks and roof damage. All buildings and housing units on Bravo Yard leak, causing inmates to wake up to puddles of water in their cells requiring serious clean-up procedures during the rainy season.

On January 12, 2017, while cell feeding due to the Bravo Yard Kitchen being flooded with roof-leaking damages, Plaintiff left his cell (Building 5, Cell 105) and slipped and fell in a puddle of water from the leaking ceiling. No "Wet Floor" signs were posted. Plaintiff landed on his back and left hip, causing injury at approximately 1705.

Defendants Macias, Borders, and Yang were the building officers and were aware of the rain puddles from the ceiling leaks, but did nothing to maintain a safe environment by ensuring the floors were mopped before Plaintiff was released for his evening meal.

Defendant Borders ensures that the building porters put up mops and cleaning supplies, including "Wet Floor" signs at 1700 to 1830 to make sure that all of the cleaning supplies are accounted for and then allows the inmate workers to make them available again after the institutional count and meal release 1830-2100 hours.

Plaintiff was lying in a puddle of water for approximately 25 minutes while waiting on an Emergency Response Vehicle to transport him to PVSP's Correctional Treatment Center ("CTC"). CTC medical staff determined that Plaintiff sustained serious back and hip injuries and issued him a double dose of Tramadol. Plaintiff remained in the CTC for observation and was subsequently issued crutches for ambulatory purposes.

Based upon Plaintiff's slip and fall injuries, the ceiling leaks and puddles of standing water, Building 5, cell 105 was red-lined as uninhabitable to all inmates and Plaintiff was temporarily rehoused to Building 5, cell 112, and ultimately rehoused to Building 3, cell 110.

On January 13, 2017, Junior Fortune, PA, issued Plaintiff a 3 day lay-in and scheduled a follow-up with a primary care provider, Defendant Ogbuehi, and x-rays of Plaintiff's hip, but not his back.

Over the next couple of weeks, Plaintiff filled out numerous CDC 7362 Health Care Services Request forms because x-rays were only taken of his hip, a discrepancy with pain

3

management (Ibuprofen), and a request for back support and egg shell crate mattress to ease pain from the hard surface.

On January 18, 2017, Plaintiff was seen by Defendant Ogbuehi and informed her that his pain level was 10 or above. Plaintiff requested more Ibuprofen to ease the pain. His Ibuprofen ran out and was not working. He also requested a cane to replace his crutches.

On January 25, 2017, Defendant Ogbuehi attempted to downplay Plaintiff's pain in her medical reports.

Claim 2

Plaintiff allegedly suffered pain in his hip and lower back. Defendant Ogbuehi ignored his complaints of pain and offered only acetaminophen and ibuprofen, which does nothing for his pain. Plaintiff is ambulatory via cane with an agitated gait. He requested a back brace for support, but was denied by Defendant Ogbuehi. Plaintiff had to buy a back braced from a fellow prisoner.

Plaintiff further alleges that all defendants were aware of the hazardous conditions of confinement and have been deliberately indifferent to fixing the problem. Plaintiff asserts that he continues to suffer pain, his pleas for help are ignored and he has problems sleeping and walking. Plaintiff offered Defendant Ogbuehi a remedy to ease the pain at night by requesting an egg crate mattress or extra mattress and a chrono for accommodation, but he was denied.

Plaintiff seeks compensatory and punitive damages, along with declaratory relief.

**III.   Discussion**

**A. Supervisory Liability**

Insofar as Plaintiff is attempting to bring suit against Defendants Kernan, Frauenheim, Rainwater and Munoz based on their supervisory roles, he may not do so. Liability may not be imposed on supervisory personnel for the actions or omissions of their subordinates under the theory of respondeat superior. Iqbal, 556 U.S. at 676–77; Simmons v. Navajo County, Ariz., 609 F.3d 1011, 1020–21 (9th Cir. 2010); Ewing v. City of Stockton, 588 F.3d 1218, 1235 (9th Cir.2009); Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002).

Supervisors may be held liable only if they "participated in or directed the violations, or

knew of the violations and failed to act to prevent them." Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989); accord Starr v. Baca, 652 F.3d 1202, 1205–06 (9th Cir. 2011); Corales v. Bennett, 567 F.3d 554, 570 (9th Cir. 2009). Supervisory liability may also exist without any personal participation if the official implemented "a policy so deficient that the policy itself is a repudiation of the constitutional rights and is the moving force of the constitutional violation." Redman v. County of San Diego, 942 F.2d 1435, 1446 (9th Cir. 1991) (citations and quotations marks omitted), abrogated on other grounds by Farmer v. Brennan, 511 U.S. 825 (1970).

Plaintiff must link Defendants Kernan, Frauenheim, Rainwater and Munoz either by direct conduct in the constitutional violation or by identifying a policy that was so deficient that the policy itself a repudiation of the Plaintiff's rights. Plaintiff has not adequately alleged that any of these defendants knew of a problem in Plaintiff's cell prior to events in the alleged complaint and otherwise failed to remedy the issue.

**B. Conditions of Confinement**

The Eighth Amendment's prohibition of cruel and unusual punishment requires prison officials to provide humane conditions of confinement. See Farmer v. Brennan, 511 U.S. 825, 832 (1994). A prison official violates the Eighth Amendment when two requirements are met: (1) the deprivation alleged is, objectively, sufficiently serious, and (2) the official is deliberately indifferent to the inmate's safety. Id. at 834. Thus, "a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837.

Under the Eighth Amendment, "slippery prison floors ... do not state even an arguable claim for cruel and unusual punishment." LeMaire v. Maass, 12 F.3d 1444, 1457 (9th Cir. 1993) (quotation omitted). Indeed, federal courts have repeatedly rejected Eighth Amendment slip and fall claims. See Oubichon v. Carey, 2017 WL 2162940, at *8 (E.D. Cal. May 17, 2017) (citing Coleman v. Sweetin, 745 F.3d 756, 764 & n.7 (5th Cir. 2014) (collecting cases); Pyles v. Fahim, 771 F.3d 403, 410 & n.25 (7th Cir. 2014) (collecting cases) ("Federal courts consistently have

adopted the view that slippery surfaces and shower floors in prisons, without more, cannot constitute a hazardous condition of confinement.")); see also Collier v. Garcia, 2018 WL 659014, at *2 (N.D. Cal. Jan. 31, 2018) (dismissing § 1983 claim alleging prisoner slipped and fell in his cell in a puddle of water from a leaking chase); Aaronian v. Fresno Cty. Jail, 2010 WL 5232969, at *2-*3 (E.D. Cal. 2010) (dismissing § 1983 claim that plumbing leak caused puddle, resulting in plaintiff's slip and fall, as not cognizable); Gilman v. Woodford, 2006 WL 1049739 (E.D. Cal. April 20, 2006) (granting qualified immunity to defendants when prisoner slipped and fell in puddle of water resulting from leaky roof known to defendants), aff'd by 2008 WL 686740 (9th Cir. March 12, 2008) (unpublished memorandum disposition). Therefore, in order state a cognizable claim for relief, there must be a confluence of exacerbating conditions such that the slippery floor posed a serious, unavoidable threat to plaintiff's safety. See Frost v. Agnos, 152 F.3d 1124, 1129 (9th Cir. 1998) ("[s]lippery floors without protective measures could create a sufficient danger to warrant relief" when an inmate alleges facts that exacerbate the danger resulting from such conditions; inmate using crutches had repeatedly fallen and injured himself on slippery shower floors); Osolinski v. Kane, 92 F.3d 934, 938 (9th Cir. 1996) (finding prisoner failed to plead any exacerbating conditions which rendered him unable to provide for his own safety).

Plaintiff's allegations that he sustained an injury from a slip and fall demonstrate negligence at most. Plaintiff has not pled any conditions that rendered him unable to provide for his own safety in the sense that they precluded him from avoiding the puddles or rendered him unable to perceive the slippery conditions. Osolinski, 92 F.3d at 938; Mancinas v. Brown, , 2018 WL 1109673, at *2 (E.D. Cal. Mar. 1, 2018) (dismissing prisoner's § 1983 claim that known, ongoing leak caused puddle, resulting in slip and fall). Thus, Plaintiff fails to state a cognizable Eighth Amendment conditions of confinement claim against any of the defendants.

**C. Medical Care**

A prisoner's claim of inadequate medical care does not constitute cruel and unusual punishment in violation of the Eighth Amendment unless the mistreatment rises to the level of "deliberate indifference to serious medical needs." Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir.

2006) (quoting Estelle v. Gamble, 429 U.S. 97, 104 (1976)). The two part test for deliberate indifference requires Plaintiff to show (1) "a 'serious medical need' by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain,'" and (2) "the defendant's response to the need was deliberately indifferent." Jett, 439 F.3d at 1096. A defendant does not act in a deliberately indifferent manner unless the defendant "knows of and disregards an excessive risk to inmate health or safety." Farmer, 511 U.S. at 837. "Deliberate indifference is a high legal standard," Simmons v. Navajo Cty. Ariz., 609 F.3d 1011, 1019 (9th Cir. 2010); Toguchi v. Chung, 391 F.3d 1051, 1060 (9th Cir. 2004), and is shown where there was "a purposeful act or failure to respond to a prisoner's pain or possible medical need" and the indifference caused harm. Jett, 439 F.3d at 1096.

In applying this standard, the Ninth Circuit has held that before it can be said that a prisoner's civil rights have been abridged, "the indifference to his medical needs must be substantial. Mere 'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action." Broughton v. Cutter Laboratories, 622 F.2d 458, 460 (9th Cir. 1980) (citing Estelle, 429 U.S. at 105–106). "[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." Estelle, 429 U.S. at 106; see also Anderson v. County of Kern, 45 F.3d 1310, 1316 (9th Cir. 1995). Even gross negligence is insufficient to establish deliberate indifference to serious medical needs. See Wood v. Housewright, 900 F.2d 1332, 1334 (9th Cir. 1990).

Further, a "difference of opinion between a physician and the prisoner—or between medical professionals—concerning what medical care is appropriate does not amount to deliberate indifference." Snow v. McDaniel, 681 F.3d 978, 987 (9th Cir. 2012) (citing Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989)), overruled in part on other grounds, Peralta v. Dillard, 744 F.3d 1076, 1082–83 (9th Cir. 2014); Wilhelm v. Rotman, 680 F.3d 1113, 1122–23 (9th Cir. 2012) (citing Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1986)). Rather, Plaintiff "must show that the course of treatment the doctors chose was medically unacceptable under the

circumstances and that the defendants chose this course in conscious disregard of an excessive risk to [his] health." Snow, 681 F.3d at 988 (citing Jackson, 90 F.3d at 332) (internal quotation marks omitted).

Plaintiff's second claim appears to be limited to the provision of care by Defendant Ogbuehi. As currently pled, Plaintiff's complaint fails to state a cognizable claim for deliberate indifference to serious medical needs against Defendant Ogbuehi. At best, Plaintiff alleges a disagreement with Defendant Ogbuehi regarding treatment for his back pain, such as whether he requires an egg crate mattress or back brace. A mere difference of opinion is not sufficient to support a claim for violation of the Eighth Amendment.

Plaintiff also makes various assertions regarding his pain medication. However, there is nothing in Plaintiff's allegations to suggest that Defendant Ogbuehi denied him pain medication. Instead, Plaintiff merely alleges a difference of opinion regarding the pain medication needed to treat his condition, which is not sufficient to state an Eighth Amendment claim.

### IV. Conclusion and Order

Plaintiff's complaint fails to state a cognizable claim for relief under federal law. As Plaintiff is proceeding pro se, the Court will grant Plaintiff an opportunity to amend his complaint to cure the identified deficiencies to the extent he is able to do so in good faith in light of the standards set forth in the above paragraphs. Lopez v. Smith, 203 F.3d 1122, 1130 (9th Cir. 2000).

Plaintiff's amended complaint should be brief, Fed. R. Civ. P. 8(a), but it must state what each named defendant did that led to the deprivation of Plaintiff's constitutional rights, Iqbal, 556 U.S. at 678-79, 129 S.Ct. at 1948-49. Although accepted as true, the "[f]actual allegations must be [sufficient] to raise a right to relief above the speculative level . . . ." Twombly, 550 U.S. at 555 (citations omitted).

Additionally, Plaintiff may not change the nature of this suit by adding new, unrelated claims in his first amended complaint. George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007) (no "buckshot" complaints).

Finally, Plaintiff is advised that an amended complaint supersedes the original complaint. Lacey v. Maricopa Cty., 693 F.3d 896, 927 (9th Cir. 2012). Therefore, Plaintiff's amended

complaint must be "complete in itself without reference to the prior or superseded pleading." Local Rule 220.

Based on the foregoing, it is HEREBY ORDERED that:

1. The Clerk's Office shall send Plaintiff a complaint form;

2. Within thirty (30) days from the date of service of this order, Plaintiff shall file an amended complaint curing the deficiencies identified by the Court in this order (or file a notice of voluntary dismissal); and

3. If Plaintiff fails to file an amended complaint in compliance with this order, the Court will recommend dismissal of this action, with prejudice, for failure to obey a court order and for failure to state a claim.

IT IS SO ORDERED.

Dated: **May 2, 2018**         /s/ Barbara A. McAuliffe
                               UNITED STATES MAGISTRATE JUDGE